UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

SAMUEL SOLOMAN POPLAR,

        Plaintiff,                Case No. 1:11-cv-470

v.                                           Honorable Paul L. Maloney

SANDY WAITE et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim or because Defendants are immune from Plaintiff's claims for monetary damages.

**Factual Allegations**

Plaintiff currently is incarcerated in the Lakeland Correctional Facility. Plaintiff's complaint does not concern the conditions of his confinement; rather, it concerns the decision of the Van Buren County Circuit Court - Family Division awarding custody of his two minor children to foster parents. In his *pro se* complaint, Plaintiff sues Child Protective Services (CPS) Case Workers Sandy Waite and Gail Cole; Attorney Richard Glazier; Kinross Correctional Facility Unit Manager Russ Bonnee; Oaks Correctional Facility Unit Manager Larry Weaver; and Michigan Department of Corrections (MDOC) Director Patricia Caruso.

Plaintiff claims that on May 14, 2008, Defendant Waite, along with a Mattawan police officer, conducted a warrantless search of his home by telling Amy Poplar (then Hughs), the mother of his two children, that they would get a court order and take the children if she did not open the door. Plaintiff was arrested on a charge of domestic violence and parole violation, and the children were removed from the home. Preliminary hearings concerning the custody of the children took place on May 29, 2008 and June 12, 2008. As a result of those hearings, the children were placed in the temporary custody of the court, under the care and supervision of the Department of Human Services (DHS) with Defendant Waite as the caseworker. (*See* Orders After Preliminary Hearing, docket #1-1, Exhibits A and B.) Under the court's orders, Petitioner was prohibited from being on the same property as or having unauthorized contact with the children, and was directed to contact the case worker upon his release from jail. Defendant Glazier was appointed to represent Petitioner on May 30, 2008, but Plaintiff claims that he did not receive notice of either hearing and had no knowledge of an attorney representing him until after the June 12 hearing.

On July 15, 2008, after Plaintiff had been released from jail, Defendant Waite and a Mattawan police officer came to his home and threatened to kick the door down if they were not allowed entry. Plaintiff claims that as of that date, he never had personally received any order from the state court regarding the children. Nevertheless, Plaintiff was charged with violating the court's order by being on the same property as the children. He later pleaded guilty to the charge and was sentenced to thirty days in the Van Buren County Jail. Following a hearing on July 30, 2008, the state court issued an Order of Disposition in the child protective proceedings. (*See* Order of Disposition, docket #1-1, Exhibit E.) The court continued the children's placement in foster care with Defendant Cole as the caseworker. Plaintiff and the children's mother were ordered to have a domestic violence assessment though Secure Counseling, Giovanni Leanor, and to follow all recommendations of the therapist. Petitioner also was required to participate in parenting classes as directed by the caseworker. Plaintiff alleges that after the assessment and several sessions with Leanor, Defendant Cole told Plaintiff to discontinue services because Leanor was not a licensed therapist. Cole told Plaintiff that he would receive a new referral for a therapist and a refund of the payments he made to Secure Counseling, but neither was forthcoming.

A review hearing concerning the children was held on December 18, 2009. In preparation for that hearing, Defendant Cole submitted a report to the state court dated December 14, 2009. (*See* Review Hearing Report, docket #1-1, Exhibit F.) In that report, Cole included the following information she received from Defendant Bonnee, Plaintiff's case manager at the Kinross Correctional Facility:

> During this report period, Sam Poplar was moved from the Charles Egeler Reception Center to The Kinross Correctional Facility in Kincheloe, Michigan. His case manager was Russ "Bill" Bonnee. Sam is no longer being supervised by Mr. Bonnee but rather has been transferred to Chuck Cook on cell block G-1. The move was

> initiated after Sam was written up for theft from the prison kitchen. He was sent to segregation and placed in the new unit after his time was served. Mr. Bonnee also disclosed that initially, Sam Poplar was placed at another facility in the Kinross facility prior to being placed in his cell block. According to records, Sam requested the move for reasons of protection as he was not getting along with other inmates in his initial placement.
>
> Sam's earliest release date was 5/29/2010. He recently went before the parole board and was extended for another year. His new earliest possible release date is 5/29/2011.

(*Id.* at Page ID#22.) Cole submitted another report dated July 9, 2010, in advance of a permanency planning hearing scheduled for July 16, 2010. (*See* Permanency Planning Hearing Report, docket #1-1, Exhibit G.) That report contained the following information allegedly provided by Defendant Weaver regarding Plaintiff's incarceration at Oaks:

> Sam Poplar entered the Michigan Department of Corrections facility shortly after his sentencing on 6/15/2009. He started out at the reception center in Jackson and was initially placed at the Kinross Correctional Facility in Kincheloe, Michigan, which was a level II correctional facility. Sam had difficulty at the facility and was moved from the level II facility to [t]he Oaks Correctional Facility in Manistee, MI. The Oaks is a level IV facility increasing his level of supervision by two steps. According to Officer Brenner, Sam is being held in the general population. Sam is now being supervised by Larry Weaver.
>
> This worker made contact with Mr. Weaver regarding the change in security level after Amy Poplar reported that her husband had been moved there only temporarily. Sam Poplar had signed a release of information allowing a 48 hour window of opportunity for this worker to discuss Sam's current services and setting. Mr. Weaver indicated that Sam has had difficulty since his return to prison. Between 11/11/2009 and 2/17/2010 he had three major tickets written against him due to unruly behavior/theft from the prison kitchen. The two most recent tickets were reportedly a week apart and precipitated his increase in security level. Sam was ticketed for disobeying a direct order on 2/10/2010 and 2/17/2010.
>
> Sam's earliest possible release date was 5/29/10. He went before his first parole board and was extended for another year. His review will consider parole for 5/29/2011.
>
> This worker attempted multiple contacts with Mr. Weaver after the original contact to determine Sam's current status and identify any services he may currently be

>involved in. He failed to return the calls. As a result, this worker made arrangements to see Sam at the Oaks in Manistee on 6/25/2010. Sam refused to meet, requesting immediate return to his unit.

(*Id.* at Page ID#41.) Plaintiff vehemently denies that he signed a release or authorization to share information contained in his prison file in advance of the communications between Cole and prison officials. After Plaintiff filed a grievance against Weaver and an investigation was conducted, Cole reported that she was mistaken and received the information from someone other than Defendant Weaver. (*See* Permanency Planning Hearing Report, docket #1-1, Exhibit I.) Cole indicated that she received the information from an unknown person in either the Record's Officer or the Warden's Office. Plaintiff further claims that Cole failed to inform the court that he had completed the required substance abuse, parenting and anger management programs, and was attending NA and AA meetings.

At a hearing held on July 18, 2008, Plaintiff pleaded no contest to the neglect/abuse petition. (*See* Order of Adjudication, docket #1-1, Exhibit Q.) Plaintiff alleges that moments before the hearing began, Defendant Glazier told Plaintiff that if he did not plead guilty to the abuse/neglect petition, his parental rights would be terminated that day. Plaintiff initially refused, but Glazier told him that the prosecutor was recommending termination and that Plaintiff should plead no contest. Glazier also advised him that he could not speak or question Cole's reports during the hearing. At a Permanency Planning Hearing on September 18, 2009, Plaintiff told Glazier that he learned from the prison library that he could speak at the hearing. Plaintiff alleges that was the first time Glazier allowed him to speak and the first time that Glazier cross-examined Defendant Cole. After the hearing, Plaintiff asked Glazier for all relevant documents in the case, but never received anything. Plaintiff then wrote to the court and asked for Glazier to be discharged from representing him.

According to Plaintiff, the court discharged Glazier on June 7, 2010. The court later ordered Glazier to turn over any hand-written documents to the court for delivery to Plaintiff, but Plaintiff never received anything.

For relief, Plaintiff asks this Court to "[r]econsider the state[']s decision of guardianship of my children to the foster parents." (Compl., docket #1, Page ID#8.) Plaintiff also seeks monetary damages of $250,000.00 and court costs.

## Discussion

I. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The statute is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision. To accomplish this, the statute states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." "The *Rooker-Feldman* doctrine, as it has become known, is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts." *Kovacic v. Cuyahoga County Dep't of Children and Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010).

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005), the Supreme Court reiterated the narrow scope of the *Rooker-Feldman* doctrine, stating:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers

> complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. In the wake of *Exxon*, the Sixth Circuit has tightened the scope of *Rooker-Feldman*. *See, e.g., Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker Feldman* is a doctrine with only limited application."). The Sixth Circuit has distinguished between plaintiffs who bring an impermissible attack on a state court judgment, for which *Rooker-Feldman* applies, and plaintiffs who assert independent claims before the district court, for which *Rooker-Feldman* does not apply. *See, e.g., Pittman v. Cuyahoga County Dep't of Children & Fam. Servs.*, 241 F. App'x 285 (6th Cir. 2007); *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432, 436-37 (6th Cir. 2006) (holding *Rooker-Feldman* not triggered because the plaintiff did not allege that he was injured by the state-court judgment, but instead filed an independent federal claim that he was injured by the defendant's filing of a false affidavit in the state-court proceeding).

Since *Exxon*, the Sixth Circuit has held that the pertinent inquiry is the "source of the injury" upon which the plaintiff bases his federal claim:

> The inquiry [focuses on] the *source of the injury* the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* (emphasis added); *see also Coles*, 448 F.3d at 858 (noting that we "have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself").

The Sixth Circuit applied the "source of injury analysis" in *Pittman*, a case similar to this one concerning temporary custody proceedings. The biological father brought the action against the county department of child and family services and social workers alleging violations of his Fourteenth Amendment due process rights and Fourteenth Amendment liberty interest in family relationships, and alleging that the defendants acted wontonly and recklessly during the state court custody proceedings. *Pittman*, 241 F. App'x at 286-87. The district court dismissed the action under the *Rooker-Feldman* doctrine. Reversing the district court, the Sixth Circuit held that none of Pittman's claims were barred by *Rooker-Feldman*. The Sixth Circuit read Plaintiff's first two claims as challenging the defendants' refusal to recommend him for custody of his minor daughter, not as a challenge to the juvenile court's decision to award custody to the child's great aunt and uncle. *Id.* at 288. Similarly, Pittman's third claim - asserting that they acted wontonly, recklessly, in bad faith, and with a malicious purpose by falsely representing information to the juvenile court - challenged the defendants' conduct, not the juvenile court's judgment. *Id.* The Sixth Circuit further relied upon the fact that Pittman sought compensatory damages and a declaratory judgment stating that the defendants' actions violated his Fourteenth Amendment rights; he did not seek custody of his daughter or otherwise request reversal of the juvenile court's decision. *Id.*

The Sixth Circuit reached the same decision in a subsequent case brought against the Cuyahoga County Department of Children and Family Services, social workers and police officers. In *Kovacic*, a mother brought suit on behalf of herself and her minor children alleging that the defendants violated her rights under the Fourteenth Amendment Due Process Clause and Ohio law when they forcefully removed the children from her home. The Sixth Circuit reversed the district court's dismissal of the children's claims under *Rooker-Feldman*. *Kovacic*, 606 F.3d at 310.

Applying the source of the injury test, the Sixth Circuit found that the children's claims did not seek review or reversal of the juvenile court's decision, but focused on the conduct of the defendants "*that led up to*" the juvenile court's decision to award temporary custody to the county. *Id.* (emphasis in original.) The Sixth Circuit also relied on the fact that the plaintiffs sought compensatory damages for alleged unconstitutional conduct by a state agency and other state officials, not injunctive or other equitable relief. *Id.*

In this case, Plaintiff asks this Court to "[r]econsider the state[']s decision of guardianship of my children to the foster parents." He also seeks monetary damages of $250,000.00 against Defendants and court costs. To the extent Plaintiff seeks reconsideration or reversal of the state court's custody decision, his action is barred by *Rooker-Feldman*. However, liberally construing Plaintiff's complaint, *Haines*, 404 U.S. at 520, he also brings claims for monetary damages against Defendants arising from their conduct leading up to the state court's decision. Those claims are not barred by *Rooker-Feldman*. The fact that Plaintiff's claims against the individual Defendants are "inextricably intertwined" with issues decided in the state court custody proceedings no longer is a determinative factor for purposes of the *Rooker-Feldman* analysis. While pre-*Exxon*, *Rooker- Feldman* analysis employed the "inextricably intertwined" analysis, *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004), the Sixth Circuit has since abandoned this "inextricably intertwined" analysis. In *McCormick*, the court noted that "inextricably intertwined" is not a separate legal test used to extend *Rooker- Feldman*'s scope; rather, it merely "describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick*, 451 F.3d at 394-95

(citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)). Accordingly, this Court will consider the merits of Plaintiff's claims for monetary damages against the named Defendants. For the reasons set forth below, the Court finds that Plaintiff fails to state a claim against Defendants or that Defendants are immune from Plaintiff's claims for monetary damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

        A.    **Defendant Glazier**

Plaintiff claims that Defendant Glazier, his court-appointed attorney, pressured him to plead no contest to the charge of abuse/neglect by telling him that his parental rights would be terminated if he did not enter a guilty plea. He further claims that Glazier misadvised him regarding his rights to speak at the hearings and cross-examine witnesses. In addition, Plaintiff claims that Glazier failed to turn over information as requested by Plaintiff and ordered by the court.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Plaintiff cannot show that his court-appointed attorney acted under color of state law. In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The

Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel - whether privately retained or paid by the state - acts purely on behalf of the client and free from state control. *Id.* The Sixth Circuit has adhered to the holding in *Polk County* in numerous unpublished decisions. *See, e.g.*, *Carswell v. Hughes*, No. 99-1795, 2000 WL 658043, at *1 (6th Cir. May 9, 2000); *Blake v. Kane*, No. 98-4386, 2000 WL 302980, at *1 (6th Cir. Mar. 14, 2000); *Rodgers v. Stacey*, No. 99-3408, 2000 WL 190100, at *1 (6th Cir. Feb. 7, 2000); *Watson v. Carreer*, No. 99-5319, 1999 WL1282433, at *1 (6th Cir. Dec. 27, 1999); *Pagani-Gallego v.Escobedo*, No. 97-1640, 1998 WL 381562, at *1 (6th Cir. June 23, 1998). Because Defendant Glazier did not act under color of state law, Plaintiff cannot maintain an action against him under § 1983.

To the extent that Plaintiff asserts claims of legal malpractice, these claims arise solely under state law. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998). Accordingly, these claims will be dismissed without prejudice.

B.    **Defendant Curtin**

The only allegations Plaintiff makes against Defendant Warden Curtin concern her denial of his Step II grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v.*

*Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Curtin engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

        C.     **Defendants Bonnee and Weaver**

Plaintiff claims that Defendants Bonnee and Weaver provided information from his prison file to Defendant Cole without his consent. Plaintiff's allegations implicate his constitutional right to privacy. The Sixth Circuit repeatedly has held that a person does not have a general constitutional right to privacy for the nondisclosure of private information. *See Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board does not constitute a constitutional violation); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (stating that the Sixth Circuit narrowly construes the privacy right to nondisclosure, and release of guards' birth dates and social security numbers did not rise to constitutional level); *Walker v. Wilson*, 67 F.

App'x 854, 856-57 (6th Cir. 2003); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (holding that dissemination of prisoner's mental health records to parole board does not constitute a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of medical records did not violate plaintiff's constitutional rights); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (inmate's constitutional right to privacy not violated by prison officer learning from his medical records that he was HIV positive); *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981) (constitutional privacy rights not violated by dissemination of juvenile delinquents' social histories to various agencies); *but see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (inmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information, e.g., HIV-positive status, from other inmates subject to legitimate penological interests).

Instead, the right to informational privacy extends only to interests that implicate a fundamental liberty interest. *Lee v. City of Columbus*, 636 F.3d 245, 260 (6th Cir. 2011). A plaintiff alleging a violation of his right to informational privacy must therefore demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (quoting *DeSanti*, 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis - the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) ("This circuit . . . will only balance an individual's interest in nondisclosure . . . against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension."). Applying these standards, the Sixth

Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061, and (2) where the information released was of a sexual, personal, and humiliating nature, *see Bloch*, 156 F.3d at 684. *Lambert*, 517 F.3d 433, 440 (6th Cir. 2008).

Plaintiff cannot show that he has a fundamental right to privacy regarding the routine matters of his prison placement, security classification and conduct while in prison. The information obtained by Cole and included in her reports to the state court could not lead to bodily harm, nor was it of a humiliating sexual nature. Nor did the information released by the prison include sensitive medical information. Because a fundamental right is not implicated, the Court is not required to balance the government's interest in disseminating the information against Petitioner's interest in keeping the information private. Regardless, the information in this case was released by prison officials to another state agency, DHS, which was responsible for the welfare of Plaintiff's minor children. The state clearly has a strong interest in protecting children from abuse and neglect. Accordingly, the information released by prison officials to Defendant Cole did not violate Plaintiff's Fourteenth Amendment privacy rights.

To the extent Plaintiff contends that Defendants violated MDOC policy by providing information to CPS without Plaintiff's consent, the failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

Section 1983 is addressed to remedying violations of federal law, not state law. *Laney*, 501 F.3d at 580-81; *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

### D. **Defendants Waite and Cole**

Plaintiff also makes claims against CPS Case Workers Sandy Waite and Gail Cole. Plaintiff claims that Defendant Waite twice came to his home with a police officer and conducted a "warrantless search." On the first occasion, Plaintiff's girlfriend opened the door after Waite threatened to get a court order to take the children. On the second occasion, someone opened the door after Waite threatened that the officer would kick it down. He also claims that Waite knew his whereabouts at the time of the preliminary hearing on the abuse/neglect petition, but failed to notify him. With regard to Defendant Case Worker Cole, Plaintiff alleges that she obtained information from the prison about his placement, security level and conduct without his consent. He further alleges that Cole was aware that he completed substance abuse and anger management classes and was attending NA and AA meetings, but failed to report that information to the state court.

"[U]nder certain circumstances, social workers are entitled to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). The scope of this immunity is akin to the scope of absolute prosecutorial immunity, *id.*, which applies to conduct "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). As the Sixth Circuit described in *Holloway*:

> The analytical key to prosecutorial immunity . . . is advocacy - whether the actions in question are those of an advocate. *See Buckley* [ *v. Fitzsimmons* ], 509 U.S. [259,] 273–74 [(1993)]; *Kalina [ v. Fletcher*], 522 U.S. [118,] [(1997)]; *Pusey* [ *v. City of Youngstown*], 11 F.3d [652,] 658 [(6th Cir.1993)]. By analogy, social workers are absolutely immune only when they are acting in their capacity as legal advocates - initiating court actions or testifying under oath - not when they are performing

>   administrative, investigative, or other functions. The case before us turns on whether the actions of which [the plaintiff] complains were taken by [the defendant social worker] in her capacity as a legal advocate.

*Holloway*, 220 F.3d at 775.

On appeal after remand, the Sixth Circuit held that the social worker sued in *Pittman*, was entitled to absolute immunity.  Pittman v. *Cuyahoga County. Dep't of Children & Fam. Servs.* (*Pittman* II), __ F.3d __, 2011 WL 1901558, at *6-8 (6th Cir. May 20, 2011).  In that case, the Sixth Circuit found that the social worker filed both the complaint and the affidavit in support of the motion for permanent custody in her capacity as a legal advocate, and, thus, was entitled to absolute immunity with regard to those actions. *Id.* at *7.  The Court further explained:

>   "[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings." *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989). The filing of the affidavit - which reflects Hurry's opinion "[t]hat permanent custody is in the best interest of [Najee and B.W.]" - represents precisely the sort of conduct within a social worker's absolute immunity "for her testimony or recommendations given in court concerning the child's best interests as she saw the matter." *Holloway*, 220 F.3d at 776.  Both of these actions are essential to Hurry's ability to "protect the health and well-being of the children," and this Court has recognized the need to allow her "to perform the necessary tasks to achieve this goal without the worry of intimidation and harassment from dissatisfied parents." *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984).

*Id.*  The Court further held that whether the social worker made intentional misrepresentations to the juvenile court in the complaint and affidavits does not affect the conclusion that she is entitled to absolute immunity.  *Id.*

In addition, the Sixth Circuit rejected Pittman's attempt to circumvent the social worker's absolute immunity for filing the complaint and affidavits by asserting that she placed false information in those documents as a result of her failure to conduct a proper investigation.  The Court distinguished an investigation that is conducted to assist a state juvenile court that is charged

- 17 -

with deciding whether to return a neglected child to the home from which he was removed. Under Ohio law, the juvenile court is charged with making custody determinations and executing service of process. The Sixth Circuit held that a social worker's "function of making . . . recommendations" on such matters to the juvenile court, " including the underlying investigation, is . . . intimately related to the judicial phase of child custody proceedings" and therefore protected by absolute immunity. *Id.* at 422–23 (emphasis added). Thus, the Court concluded that the social worker's absolute immunity also protected her from Pittman's claim that her allegedly false assertions in the complaint and affidavits stemmed from an inadequate investigation. *See also Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421-23 (6th Cir. 2001) (extending absolute immunity to two social workers who failed to conduct a careful investigation before incorporating false accusations in a child abuse petition).

Under this authority, Defendants Waite and Cole are entitled to immunity for the conduct alleged by Plaintiff. With regard to Defendant Waite, she went to Plaintiff's home on both occasions in her capacity as a legal advocate for his minor children, and, thus, is immune from Plaintiff's claim for monetary damages. In addition, because service of process is intimately associated with the judicial phase of the child custody proceedings, Waite is immune from Plaintiff's claim that she failed to notify him of the preliminary hearing on the abuse/neglect petition. Defendant Cole filed her reports with the Van Buren County Circuit Court and made recommendations to assist the state court with making the custody determination. Because Cole's reports were intimately related with the judicial phase of the child custody proceedings, she has immunity with regard to the content of those reports. Moreover, other than the issue of whether he consented to the release of information, Plaintiff does not allege that the Defendant Cole included false or misleading information in her reports. Rather, Plaintiff complains that Cole failed to report

his completion of court-ordered rehabilitative programs and obtained information from the prison without his consent. Cole's alleged omissions, even if intentional, do not affect the conclusion that he is entitled to absolute immunity. *Pittman* II, 2011 WL 1901558, at *7. Furthermore, this Court concluded above that Plaintiff does not have a constitutionally protected privacy right in the type of information Cole obtained from the prison. Accordingly, Plaintiff's claims against Defendants Waite and Cole will be dismissed on the ground of immunity.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), for failure to state a claim or because Defendants are immune from Plaintiff's claims for monetary damages.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>August 12, 2011</u>  /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge